1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

PHILLIP DEWITT,

         Plaintiff,

         v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

         Defendant.

No. 1:15-CV-03171-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF No. 15, 18.  Attorney Cory J. Brandt represents Phillip Franklin DeWitt (Plaintiff); Special Assistant United States Attorney Daniel P. Talbert represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on January 16, 2009, alleging disability since May 1, 2004, due to major depression, posttraumatic stress disorder (PTSD), and compulsive personality disorder.  Tr. 142-147, 172, 177.   The applications were

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

denied initially and upon reconsideration.  Tr. 84-88, 91-97.  Administrative Law Judge (ALJ) James W. Sherry held a hearing on October 26, 2011, at which Plaintiff, represented by counsel, and vocational expert, Debra LaPoint, testified.  Tr. 41-76.  The ALJ issued an unfavorable decision on December 15, 2011.  Tr. 19-29.  The Appeals Council denied review on January 29, 2013.  Tr. 1-7.  Plaintiff filed an action for judicial review on February 19, 2013.  Tr. 622.  Plaintiff filed a subsequent application for SSI on February 21, 2013.  Tr. 662.  On January 19, 2014, the United States District Court for the Eastern District of Washington issued an order granting Plaintiff's motion for summary judgement and remanding the case for additional proceedings.  Tr. 654-655.   On remand the February 21, 2013, application was consolidated with the January 16, 2009, applications, and ALJ Larry Kennedy[1] held a hearing on April 22, 2015, at which Plaintiff and vocational expert, Trevor Duncan, testified.  Tr. 556-594, 662.  The ALJ issued an unfavorable decision on July 13, 2015, which became the final decision of the Commissioner after 60 days.  *See* 20 C.F.R. § 404.984.  The final decision of the Commissioner is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on November 28, 2015.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 29 years old at the alleged date of onset.  Tr. 142.  Plaintiff completed a bachelor's degree in accounting since the alleged date of onset.  Tr. 570.  He last worked for a friend as an accounting clerk and the work ended in 2012.  Tr. 117, 565.  Prior to working as an accounting clerk, Plaintiff was in prison from 1998 to 2009.  Tr. 567.

---

[1]All future references to the ALJ is a reference to ALJ Larry Kennedy.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 23, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity from October 1, 2009, through December 31, 2010.  Tr. 538-539.  The ALJ continued the five step sequential evaluation process for the period of time Plaintiff was not engaged in substantial gainful activity.  Tr. 539.

At step two, the ALJ determined Plaintiff had the following severe impairments:  bipolar disorder, major depressive disorder, anxiety/PTSD, obsessive-compulsive disorder (OCD), and personality disorder.  Tr. 539.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 539-541.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of work at all exertional levels with the following nonexertional limitations:

> [H]e must avoid concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation.  He is limited to frequent handling and fingering with his nondominant upper extremity.  He can perform simple, routine tasks and follow short, simple instructions.  He can do work that needs little or no judgment and he

can perform simple duties that can be learned on the job in a short period.  He requires a work environment with minimal supervisor contact.  (Minimal contact does not preclude all contact, rather it means contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges or being in proximity to the supervisor).  He can work in proximity to coworkers but not in a cooperative or team effort.  He requires a work environment that has no more than superficial interactions with coworkers.  He requires a work environment that is  predictable and with few work setting changes, that is, a few routine and uninvolved tasks according to set procedures, sequence, or pace with little opportunity for diversion or interruption. He requires a work environment without public contact.

Tr. 541.  The ALJ identified Plaintiff's past relevant work to include hand packager and a composite job of receptionist and data entry clerk.  Tr. 547.  The ALJ concluded that Plaintiff was able to perform his past relevant work as a hand packager.  *Id.*

In the alternative to a step four determination denying benefits, the ALJ made a step five determination that considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of hand packager, production assembler, and laundry laborer.  Tr. 548.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged date of onset, May 1, 2004, through the date of the ALJ's decision, July 23, 2015.  Tr. 548.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends that the ALJ erred by (1) failing to accord proper weight to the opinions of Mark Cross, Ph.D., Aaron Anderson, D.O., and Carlson Carter, LMHP; (2) failing to properly consider Plaintiff's testimony about the

severity of his symptoms, (3) failing to form a proper step four determination; and (4) failing to form a proper step five determination.

## DISCUSSION

### A.    Evaluation of Medical Evidence

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Mark Cross, Ph.D., Aaron Anderson, D.O., and Carlson Carter, LMHP.  ECF No. 15 at 13-19.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id.* at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1.    Mark Cross, Ph.D.

Plaintiff challenges the weight the ALJ gave to Dr. Cross's opinion. ECF No. 15 at 14-17.

Dr. Cross conducted an evaluation and risk assessment on February 9, 2009. Tr. 322-328. From then on, Dr. Cross treated Plaintiff. Tr. 563. Dr. Cross wrote a letter on September 22, 2010, detailing Plaintiff's diagnosis and responses to medications. Tr. 422-723. Dr. Cross completed a Department of Social and Health Services (DSHS) Psychological/Psychiatric Evaluation form on February 9, 2010, in which he diagnosed Plaintiff with PTSD, OCD, and Bipolar II Disorder. Tr. 816-821. Dr. Cross opined that Plaintiff had a marked[2] to severe[3] limitation in the abilities to relate appropriately to co-workers and supervisors, to interact appropriately in public contact, to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and to maintain appropriate behavior in a work setting; and a moderate[4] to marked limitation in the abilities to exercise judgement and make decisions. Tr. 819. Dr. Cross concluded his opinion by stating Plaintiff was capable of "[a] job with very low demands – no interactions/involvement with others." *Id*.

---

[2]A marked limitation is defined as "Very significant interference." Tr. 819.

[3]A severe limitation is defined as "Inability to perform one or more basic work-related activities." Tr. 819.

[4]A moderate limitation is defined as "Significant in[ter]ference" Tr. 819.

1    Dr. Cross completed a Mental Medical Source Statement form on July 13,

2    2011, in which he opined that Plaintiff had a marked[5] to severe[6] limitation in the

3    abilities to interact appropriately with the general public, to accept instructions and

4    respond appropriately to criticism from supervisors, to get along with co-workers

5    or peers without distracting them or exhibiting behavioral extremes, and to

6    maintain socially appropriate behavior and to adhere to basic standards of neatness

7    and cleanliness; he opined Plaintiff had a marked limitation in the abilities to work

8    in coordination with or proximity to others without being distracted by them and to

9    complete a normal workday and workweek without interruptions from

10   psychologically based symptoms and to perform at a consistent pace without an

11   unreasonable number and length of rest periods; he opined that Plaintiff had a

12   moderate[7] limitation in the abilities to carry out detailed instructions, to maintain

13   attention and concentration for extended periods, to perform activities within a

14   schedule, maintain regular attendance and be punctual within customary

15   tolerances, and to ask simple questions or request assistance; he opined Plaintiff

16   had a mild[8] to moderate limitation in the ability to respond appropriately to

17   changes in the work setting.  Tr. 426-428.  Additionally, Dr. Cross opined that

18   _____

19       [5]A marked limitation is defined as "Very significant interference with basic

20   work-related activities i.e., unable to perform the described mental activity for

21   more than 33% of the work day."  Tr. 426.

22       [6]A severe limitation is defined as "Inability to perform one or more basic

23   work-related activities."  Tr. 426.

24       [7]A moderate limitation is defined as "Significant interference with basic

25   work-related activities i.e., unable to perform the described mental activity for at

26   least 20% of the workday up to 33% of the work day."  Tr. 426.

27       [8]A mild limitation is defined as "No significant interference with basic

28   work-related activities."  Tr. 426.

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

should Plaintiff work a 40-hour per week job, it was more probably than not that Plaintiff would miss some work due to mental impairments. Tr. 428.  However, Dr. Cross could not estimate the number of days per month, stating that it "would depend on job situation/task [and] amount of interaction with public/others." *Id*. Dr. Cross then wrote a second letter on August 23, 2011, stating that the limitations set forth in the July 13, 2011, mental medical source statements "appear to remain accurate for Mr. DeWitt."  Tr. 429.

On July 15, 2012, Dr. Cross completed a second Mental Medical Source Statement form with identical terms and definitions, in which he opined that Plaintiff had a severe limitation in the ability to completed a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to maintain social appropriate behavior and to adhere to basic standards of neatness and cleanliness; a marked to severe limitation in the abilities to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; a marked limitation in the abilities to maintain attention and concentration for extended periods and to work in coordination with or proximity to others without being distracted by them; and a moderate limitation in the abilities to understand and remember very short and simple instructions, to understand and remember detailed instructions, to carry out detailed instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to ask simple questions or request assistance, and to respond appropriately to changes in the work setting.  Tr. 756-758.  Again, Dr. Cross opined that Plaintiff would more probable than not miss some work due to mental impairments if he were employed at a 40-hour per week schedule, but could not estimate the number of days missed per month.  Tr. 758.

The ALJ gave Dr. Cross' February 2010 assessment, September 2010 letter, July 2011 opinion, and July 2012 opinion little weight because they were (1) inconsistent with Plaintiff's longitudinal treatment history, (2) inconsistent with his cooperative interactions with his providers, (3) inconsistent with his performance on mental status examinations, (4) inconsistent with his documented daily activities and social functioning, (5) Dr. Cross did not treat Plaintiff frequently enough , and (6) the opinion was based on Plaintiff's self-reports.  Tr. 545-546.

The ALJ's first three reasons for rejecting Dr. Cross' opinions failed to meet the specific and legitimate standard.  In his decision, the ALJ simply made the assertions that the inconsistencies existed; he failed to discuss any evidence to support such inconsistencies.  Tr. 545.  Therefore, the ALJ failed to set forth his interpretations and explain why they, rather than Dr. Cross', are correct.  As such, these three reasons are not sufficient to reject the opinion

The ALJ's fourth reason for rejecting these opinions, that the opinions were inconsistent with Plaintiff's documented daily activities and social functioning, is a specific and legitimate reason, but only as to the February 2010 opinion.  A claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition.  *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir.1990).  To support this determination, the ALJ noted that Plaintiff was able to work at substantial gainful activity levels in the fourth quarter of 2009 through 2010 while taking online college courses and earning a degree in accounting.  Tr. 545.  At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from October 1, 2009, through December 31, 2010.  Tr. 538-539.  Plaintiff failed to challenge this step one determination in his briefing.  ECF No. 15.  The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Therefore, the Plaintiff was working at substantial gainful activities levels when the February

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

2010 opinion was penned. While the opinion stated that Plaintiff was capable of a job with very low demands and no interactions or involvement with others, the evidence showed that Plaintiff's job exceeded these limitations. Tr. 819. Plaintiff testified that he worked as an accounting clerk, which included answering the phone and putting away records. Tr. 565. During this time, Plaintiff was also taking courses online to earn an accounting degree. Tr. 570. Considering the demands of both the job and the online courses, both in complexity and interactions with others, the ALJ did not error in concluding that these activities were inconsistent with Dr. Cross' opinions.

However, the ALJ determined that by the end of 2010, Plaintiff was no longer employed at substantial gainful activity levels. Tr. 538-539. Therefore, this reason does not meet the specific and legitimate standard for the subsequent opinions in July of 2011 and July of 2012.

The ALJ's fifth reasons for rejecting Dr. Cross' opinions, that Dr. Cross had not seen Plaintiff with enough frequency to support his opinion, is a specific and legitimate reason. The Ninth Circuit has held that when a treating physician's opinion is provided an extended period of time after treatment it is an acceptable reason to reject an opinion. *See Lewis v. Barnhart*, 220 F. App'x 545, 548 (9th Cir. 2007) (finding that the fact the doctor had not treated the claimant since November of 2000 is a specific and legitimate reason for discounting the opinion). To support his rationale, the ALJ noted that (1) Dr. Cross had not seen Plaintiff for three months when he offered his July 2011 opinion, (2) he only saw Plaintiff once a quarter, (3) Dr. Cross himself stated that only seeing the Plaintiff quarterly made it difficult to complete the requested Medical Source Statement forms, and (4) the July 2012 opinion resulted from a request by Plaintiff to fill out the form like he had before, but to leave off the part of about his ability to perform even a menial job. Tr. 546.

Dr. Cross provided an opinion on July 13, 2011, and treated Plaintiff on

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

August 23, 2011.  Tr. 810.  Dr. Cross then sent a letter confirming that the July 13, 2011, opinion was accurate at the time of Plaintiff's August 23, 2011, appointment.  Tr. 810.  While, Dr. Cross' July 2011 opinion may have been confirmed by the August 23, 2011, treatment, Dr. Cross still cast doubt on his ability to accurately complete these Mental Medical Source Statement forms when only seeing Plaintiff on a quarterly basis in his July 6, 2012, letter.  Tr. 807.  Additionally, substantial evidence supports the ALJ's conclusion that Plaintiff instructed Dr. Cross how to complete the form in Plaintiff's July 6, 2012, letter stating, "Just fill out like you did other one except don't put I can work a menial job."  Tr. 808.  Therefore, the ALJ provided legally sufficient reasons for rejecting the July 2011 and the July 2012 opinions.

The final reason the ALJ gave for rejecting Dr. Cross' opinions, that they were based on Plaintiff's self-reports, is not a specific and legitimate reason.  A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  But the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, the ALJ failed to discuss a basis for his conclusion that the opinion was based on Plaintiff's self-reports.  Tr. 546.  Therefore, this reason fails to meet the specific and legitimate standard.

Here, the ALJ has provided at least one specific and legitimate reason for rejecting each of Dr. Cross' opinion.  Therefore, any errors in the ALJ's treatment of Dr. Cross' opinions were harmless.  *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 2.    Aaron Anderson, D.O.

On June 20, 2011, Dr. Anderson completed a Medical Report form, in which he diagnosed Plaintiff with bipolar disorder, OCD, PTSD, depression.  Tr. 424.  He

opined that Plaintiff would need to lie down during the day for naps due to his insomnia. *Id.* Dr. Anderson opined that if Plaintiff were employed at a 40-hour a week job, he would miss work due to medical impairments four or more days per month. Tr. 425. Dr. Anderson stated that these impairments had existed since January 2004 and that Plaintiff was currently off all meds and was not stable for work. *Id.*

The ALJ gave Dr. Anderson's opinion little weight because they were (1) inconsistent with Plaintiff's longitudinal treatment history, (2) inconsistent with his cooperative interactions with his providers, (3) inconsistent with his performance on mental status examinations, (4) inconsistent with his documented daily activities and social functioning, and (5) it was based on Plaintiff's self-reports. Tr. 545-546.

The ALJ's first reason for rejecting Dr. Anderson's opinion, that it was inconsistent with the longitudinal treatment history, meets the specific and legitimate standard. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1196. The ALJ specifically noted that at the time of Dr. Anderson's opinion, Plaintiff was not taking his medication and that when taking his medication, his impairments were successfully treated. Tr. 545. Dr. Anderson's opinion noted twice that Plaintiff was currently off of medications and, therefore, not stable for work. Tr. 425. Throughout his decision, the ALJ noted that Plaintiff improved with medication. Tr. 542-544. Therefore, the ALJ properly determined that Dr. Anderson's opinion was inconsistent with the medical evidence because evidence showed that Plaintiff's impairments improved with medications and Plaintiff had taken medication between January 2004 and the date of Dr. Anderson's opinion. Therefore, the symptoms at the severity he opined had not been present since January 2004.

The ALJ simply stated the remaining four conclusions for why Dr.

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

Anderson's opinion was rejected without providing any explanations as to why he came to this determination. *Embrey*, 849 F.2d at 421-422 (the ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."). Therefore, these remaining reasons failed to meet the specific and legitimate standard. However, these errors were harmless, because the ALJ provided a specific and legitimate reason for rejecting Dr. Anderson's opinion. *See Tommasetti*, 533 F.3d at 1038.

### 3.   Carlson Carter, LMHP

Mr. Carter completed a Psychological/Psychiatric Evaluation for the Washington Department of Social and Health Services on November 17, 2008. Tr. 242-245. Mr. Carter opined that Plaintiff had a marked[9] limitation in the abilities to interact appropriately in public contacts, and the respond appropriately to and tolerate the pressures and expectations of a normal work setting and a moderate[10] limitation in the abilities to understand, remember, and follow complex (more than two step) instructions, to exercise judgment and make decisions, to relate appropriately to co-workers and supervisors, and to care for himself, including personal hygiene and appearance. Tr. 244. Mr. Carter noted that Plaintiff's ability to perform was enhanced by taking his medications. *Id.*

The ALJ gave Mr. Carter's opinion little weight because they were (1) inconsistent with Plaintiff's longitudinal treatment history, (2) inconsistent with his cooperative interactions with his providers, (3) inconsistent with his performance on mental status examinations, (4) inconsistent with his documented daily activities and social functioning, and (5) it was based on Plaintiff self-reports. Tr.

---

[9]A marked limitation is defined as "Very significant interference with basic work-related activities." Tr. 242.

[10]A moderate limitation is defined as "Significant [interference] with basic work-related activities." Tr. 242.

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

545-546.

Unlike Dr. Cross and Dr. Anderson, Mr. Carter is not an acceptable medical source; instead, he is considered an "other source."  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist.  20 C.F.R. §§ 404.1513(d), 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give reasons that are germane to each "other source" to discount their opinions.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the five reasons the ALJ provided for rejecting Mr. Carter's opinion qualify as reasons germane to Mr. Charter.  Therefore, the ALJ did not error in his rationale for rejecting Mr. Charter's opinion.

**B.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 15 at 19-21.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms.  Tr. 542.  The ALJ reasoned that Plaintiff was less than fully credible because his symptom reporting was contrary

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

to (1) daily activities and social interactions, and (2) medical evidence.  Tr. 542-544.

### 1. Daily Activities and Social Interactions

The ALJ's first reason for finding Plaintiff less than fully credible, that Plaintiff's activities cast doubt on his alleged limitations, is a specific, clear and convincing reason to undermine Plaintiff's credibility.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Here, the ALJ determined that Plaintiff's testimony was inconsistent with his daily activities.  First, the ALJ noted that Plaintiff reported difficulty interacting with others while incarcerated, but records from the Department of Corrections showed that he had no infractions and denied any violence while in prison.  Tr. 542.  At the hearing, Plaintiff testified that he had difficulty getting along with others in prison and was getting in trouble.  Tr. 578-579.  However records show he had no infractions.  Tr. 249.  The ALJ also noted that Plaintiff reported that he did not drive, but in May of 2009, he indicated that he did drive.  *Id*. citing Tr. 213, 363. The ALJ noted that Plaintiff reported difficulty staying on task in June 2009, but his earnings doubled in the third quarter of 2009 and by the fourth quarter, Plaintiff was earning substantial gainful activity levels.  Tr. 543.  At the hearing Plaintiff testified that he dropped out of his online college program, but he also reported that he completed the degree.  Tr. 570, 578, 801.  The ALJ also noted that Plaintiff reported being unable to take orders from others, but was able to care for Mr. Wells at his instruction.  Tr. 543, 572.  The ALJ adequately supported his determination that Plaintiff's testimony was inconsistent with his daily activities by stating what evidence undermined what testimony.  Therefore, the ALJ did not

1   error in his treatment of Plaintiff's testimony.

2   **2.    Contrary to the objective medical evidence**

3   The ALJ's second reason for finding Plaintiff less than credible, that

4   Plaintiff's symptoms are not supported by objective medical evidence, supports the

5   ALJ's determination that Plaintiff was less than fully credible.

6   Although it cannot serve as the sole ground for rejecting a claimant's

7   credibility, objective medical evidence is a "relevant factor in determining the

8   severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261

9   F.3d 853, 857 (9th Cir. 2001). Here, the ALJ summarized Plaintiff's allegations on

10  various disabilities reports and at the hearing. Tr. 542. Then, the ALJ provided

11  citations to the medical record showing his symptoms were relativity controlled

12  when Plaintiff took his medications. Tr. 543-544. Therefore, Plaintiff's statement

13  of disabling impairments were not supported by the evidence showing Plaintiff's

14  impairments were controlled when taking medication.

15  The ALJ did not error in his determination that Plaintiff was less than fully

16  credible.

17  **C.    Step Four**

18  Plaintiff argues that the ALJ failed to make all the findings of facts required

19  at step four. ECF No. 15 at 21-23. Defendant's briefing does not challenge the

20  argument in depth, but instead asserts that any error resulting at step four is

21  harmless due to the ALJ's legally sufficient step five determination. ECF No. 18

22  at 17. The Court agrees that the step five determination was sufficient; therefore,

23  any error resulting from the step four determination would be harmless. *See*

24  *Tommasetti*, 533 F.3d at 1042.

25  **D.    Step Five**

26  Plaintiff argues that the ALJ's hypothetical question to the vocational expert

27  was inadequate because it failed to account for Plaintiff's limitations. ECF No. 15

28  at 23-24. An ALJ is only required to present the vocational expert with those

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-1166 (9th Cir. 2001). Here, the ALJ has provided legally sufficient reasons for not including the limitations opined by Dr. Cross, Dr. Anderson, and Mr. Carter. *See supra*.

Plaintiff also asserts that the ALJ erred in his residual functional capacity determination because he failed to include the moderate limitations opined by Patricia Kraft, Ph.D. ECF No. 15 at 15-16. A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the residual functional capacity determination, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See, e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

Dr. Kraft was a medical consultant for the Social Security Administration who reviewed Plaintiff's file and completed a Mental Residual Functional Capacity Assessment form, also known as Form SSA-4734-F4-SUP, on September 11, 2009. Tr. 413-415. In section one of the form, Dr. Kraft opined that Plaintiff had a moderate[11] limitation in the abilities to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. Tr. 413-414. Then under the "Functional Capacity

---

[11]There is no definition for the term moderate. Tr. 413-415.

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

Assessment," Dr. Kraft stated the following:

> [Claimant] is able to understand, remember and following through with simple and complex instructions. His attention, concentration, persistence and pace will be intermittently slowed [due to] interference of compulsions, anxiety, and dysphoria. Nonetheless capable of productive work.
>
> Best away from the demands of [general public]; should not work with disadvantaged adults or children. Can manage superficial interactions with others in the work place.
>
> May take longer to adjust to routine changes given his high levels of anxiety and OCD behaviors. No other deficits of adaptation noted.

Tr. 415. The psychological nonexertional limitations included in the ALJ's residual functional capacity determination included:

> He can perform simple, routine tasks and follow short, simple instructions. He can do work that needs little or no judgment and he can perform simple duties than can be learned on the job in a short period. He requires a work environment with minimal supervisor contact. (Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges or being in proximity to the supervisor). He can work in proximity to coworkers but not in a cooperative or team effort. He requires a work environment that has no more than superficial interactions with coworkers. He requires a work environment that is predictable and with few work setting changes, that is, a few routine and uninvolved tasks according to set procedures, sequence, or pace with little opportunity for diversion or interruption. He requires a work environment without public contact.

Tr. 541.

The Program Operations Manual System[12] (POMS) DI 24510.060 details

---

[12]The POMS does not impose judicially enforceable duties on the Court or the ALJ, but it may be "entitled to respect" under *Skidmore v. Swift & Co.*, 323

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

Social Security's Operating Policy as to the Mental Residual Functional Capacity Assessment Form SSA-4734-F4-SUP.  According to this POMS provision, section one of the form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the [residual functional capacity] assessment."  POMS DI 24510.060. Instead, section three, titled "Functional Capacity Assessment," is for "recording the mental [residual functional capacity] determination.  It is in this section that the actual mental [residual functional capacity] assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."  *Id*. Therefore, it is the narrative in section three that is Dr. Kraft's residual functional capacity opinion, not the moderate limitations noted in section one.

The limitations addressed in the narrative section are consistent with the ALJ's residual functional capacity assessment.  Therefore, Dr. Kraft's opinion was part of the ALJ's residual functional capacity analysis, which was presented to the vocational expert, and the step five determination is without error.

---

U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587–88, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010).  Here, the issue is not determining the meaning of an ambiguous regulation, but instead understanding how to correctly read a form produced and distributed by the Social Security Administration to its Medical Consultants.  Therefore, by relying on the POMS provision in this case, the Court is not allowing the provision to set a judicially enforceable duty on the ALJ, but only using it as a guide to define the parameters of a Medical Consultant's opinion on an agency supplied form.

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED June 6, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 21